# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JORGE SOLER and KAIRO GONZALEZ, <br><br> Plaintiffs, <br><br> v. <br><br> LOANDEPOT.COM, LLC, <br><br> Defendant. | CIVIL ACTION FILE NO: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, JORGE SOLER and KAIRO GONZALEZ bring this action for damages and other relief against Defendant LOANDEPOT.COM, LLC and allege as follows:

### NATURE OF THE ACTION

1. This is an action for unpaid minimum wages and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA").

### PARTIES

2. Plaintiff Jorge Soler ("Mr. Soler") is a citizen of Georgia.

3. Plaintiff Kairo Gonzalez ("Mr. Gonzalez," and together with Mr. Soler, "Plaintiffs") is a citizen of Georgia.

4. Defendant loanDepot.com, LLC ("loanDepot" or "Defendant") is a Delaware company licensed to conduct business in the state of Georgia.

5. loanDepot's principal place of business is located at 26642 Towne Centre Drive, Foothill Ranch, California, 92610.

6. loanDepot may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Registered Agent Solutions, Inc., 900 Old Roswell Lakes Parkway, Suite 310, Roswell, Georgia, 30076.

7. loanDepot is subject to personal jurisdiction in this Court.

## JURISDICTION AND VENUE

8. The Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because they raise questions of federal law.

9. Under 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Fulton County, Georgia, which is located within the Atlanta Division of the Northern District of Georgia.

**FACTUAL ALLEGATIONS SHOWING THAT LOANDEPOT EMPLOYED PLAINTIFFS**

10. laonDepot is a California based non-bank holding company, which sells mortgage and non-mortgage lending products.

11. loanDepot sells its products in in all 50 states and Washington, D.C.

12. laonDepot has been licensed to conduct business in the state of Georgia since 2009.

13. loanDepot qualifies as an "employer" within the meaning of the FLSA.

14. loanDepot is a covered enterprise under the FLSA.

15. laonDepot's gross sales or business done exceeds $500,000.00, annually.

16. loanDepot is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

17. loanDepot employs two or more individuals who engage in commerce or regularly handle or otherwise work on goods or materials that have been moved in or produced for commerce.

18. laonDepot sells its products in Georgia and all other 49 states, and Washington, D.C.

19. loanDepot has employees in California, Georgia, and other states within the United States.

20. While performing their job duties, laonDepot's employees regularly handle materials that were manufactured outside of the state of Georgia.

21. While performing their job duties, loanDepot's employees regularly use phones and/or computers manufactured outside the state of Georgia.

22. laonDepot employed Plaintiffs as that term is defined by the FLSA.

23. Plaintiffs worked for loanDepot as Loan Consultants.

24. As part of their job duties, Plaintiffs sold loans offered by loanDepot.

25. laonDepot hired Plaintiffs.

26. loanDepot maintained Plaintiffs' employment records.

27. loanDepot set Plaintiffs' work schedule.

28. loanDpeot regularly evaluated Plaintiffs' performance.

29. loanDepot paid Plaintiffs' wages.

30. laonDepot directed Plaintiffs' work.

31. laonDepot told Plaintiffs which leads to call and/or which leads calls to answer.

**FACTS SUPPORTING PLAINTIFFS' CLAIM FOR UNPAID WAGES IN VIOLATION OF THE FLSA**

32. Mr. Soler began working for laonDepot on or about July 11, 2021.

33. Mr. Soler worked for loanDepot until approximately February 12, 2022.

34. Mr. Soler's typical work schedule was Monday through Friday, from 8:00 a.m. until 6:00 p.m.

35. Mr. Gonzalez began working for laonDepot on or about September 19, 2021.

36. Mr. Gonzalez worked for loanDepot until approximately February 14, 2022.

37. Mr. Gonzalez's usual work schedule was Monday through Friday, from 8:00 a.m. until 6:00 p.m.

38. However, in order to complete their work on behalf of loanDepot, Plaintiffs frequently worked on the weekends.

39. For the first twelve (12) weeks of employment with loanDepot, loanDepot paid Mr. Soler a weekly sum of $1,500.00.

40. For the first twelve (12) weeks of employment with loanDepot, loanDepot paid Mr. Gonzalez a weekly sum of $2,194.38.

41. After the first twelve weeks of employment, both Plaintiffs were paid on a purely commission basis.

42. After the first twelve weeks of employment, loanDepot compensated Plaintiffs the commissions Plaintiffs earned.

43. Plaintiffs' earned commissions on the loans they sold.

44. Plaintiffs' commissions were earned at the time the loan they sold closed.

45. After the first twelve weeks of employment, loanDepot paid Plaintiffs no compensation other than the commissions they earned.

46. Once loanDepot began to compensate Plaintiffs solely on commissions earned, if Plaintiffs earned no commissions during the workweek, loanDepot paid Plaintiffs no wages or other compensation for that workweek.

47. loanDepot directed Plaintiffs to work at loanDepot's office three days per week.

48. loanDepot directed Plaintiffs to work from home two days per week.

49. As Loan Consultants, loanDepot provide Plaintiffs with all, or nearly all, of their sale leads.

50. The leads loanDepot provided to Plaintiffs came in two forms.

51. One form of leads was phone numbers of potential clients originated by loanDepot.

52. The other form of leads was incoming calls from potential clients that loanDepot directed to Plaintiffs' phone number.

53. Plaintiffs regularly worked in excess of 40 hours per workweek for loanDepot.

54. loanDepot knew Plaintiffs worked in excess of 40 hours because, among other reasons, loanDepot regularly scheduled Plaintiffs to work more than 40 hours per workweek.

55. loanDepot directed Plaintiffs to work more than 40 hours during most, if not all, workweeks.

56. loanDepot also knew Plaintiffs worked more than 40 hours in certain workweeks because Plaintiffs regularly contacted their manager, Trey Goble, and other managers assigned to Plaintiffs, on weekends and late into the evening regarding work on behalf of loanDepot.

57. Plaintiffs also contacted Joe Burke, their direct supervisor, outside of their regular work scheduled concerning work on behalf of loanDepot.

58. In violation of the FLSA's recordkeeping requirement, laonDepot failed to maintain accurate records of Plaintiffs' hours worked.

59. loanDepot's practices resulted in Plaintiffs working hours in excess of 40 hours per week, for which they were not compensated at one and one-half times their regular rate of pay.

60. loanDepot never compensated Plaintiffs any overtime wages throughout their entire employment with loanDepot.

61. loanDepot knew, or should have known, that Plaintiffs worked hours in excess of 40 during certain workweeks, for which they were not properly compensated.

62. During certain workweeks, loanDepot paid each Plaintiff no wages for the work each Plaintiff performed on behalf of loanDepot.

63. By way of example, for the workweek October 31, 2021, to November 6, 2021, loanDepot paid Mr. Soler no wages despite him performing work on behalf of loanDepot.

64. Further, loanDepot paid Mr. Gonzalez no wages for the work he performed on behalf of loanDepot for the workweek of January 9, 2022, through January 15, 2022.

65. The two above workweeks are examples of multiple workweeks in which loanDepot paid no wages to Plaintiffs for work they each separately performed on behalf of loanDepot.

66. These and other of loanDepot's practices resulted in Plaintiffs not earning at least $7.25 per hour for each hour worked in certain workweeks.

67. laonDepot knew, or should have known, that it was not compensating Plaintiffs at least $7.25 per hour for each hour worked in certain workweeks.

68. In issuing Plaintiffs' payroll, loanDepot knew, or should have known, it was not compensating Plaintiffs at least $7.25 per hour in certain workweeks.

69. loanDepot knew, or should have known, that in the workweeks it issued Plaintiffs no wages, Plaintiffs performed work on behalf of loanDepot, but were not paid at least $7.25 per hour for their work.

## COUNT 1: FAILURE TO PAY FLSA OVERTIME WAGES

70. Plaintiffs regularly worked more than 40 hours per week during certain workweeks while employed by Defendant.

71. Defendant failed to compensate Plaintiffs for all time worked, including those in excess of 40 hours per workweek.

72. Defendant failed to compensate Plaintiffs at one and one-half times their regular rate of pay for all time worked over 40 hours during certain workweeks.

73. Defendant suffered or permitted Plaintiffs to work hours in excess of 40 hours during certain workweeks.

74. Defendant knew, or should have known, that Plaintiffs worked in excess of 40 hours during certain workweeks.

75. Defendant knew Plaintiffs worked more than 40 hours during certain workweeks, and chose not to pay Plaintiffs one and one-half times their regular rate of pay for time worked over 40 hours per workweek.

76. Defendant violated the FLSA's record-keeping provision by failing to keep accurate time records of Plaintiffs' work on behalf of Defendant.

77. Defendant violated the FLSA's overtime provision willfully and with reckless disregard for Plaintiffs' rights.

78. Plaintiffs seek their unpaid overtime for all time over 40 hours in certain workweeks, in which Defendant failed to compensate them at 1.5 times their regular rate of pay.

79. Pursuant to U.S.C. § 216(b), Defendant is liable to Plaintiffs for all unpaid overtime wages, liquidated damages, and attorneys' fees and costs of litigation.

### COUNT 2: FAILURE TO PAY FLSA MINIMUM WAGES

80. During the time relevant to this Complaint, Plaintiffs performed work on behalf of Defendant.

81. For certain workweeks, Defendant failed to compensate Plaintiffs any wages for the work they performed.

82. Defendant failed to compensate Plaintiffs at least $7.25 per hour for all hours they worked.

83. Defendant suffered or permitted Plaintiffs to work hours for which Defendant failed to compensate Plaintiffs at least $7.25 per hour for all hours they worked.

84. Defendant knew, or should have known, that Plaintiffs worked hours for which they were not compensated at least $7.25 in certain workweeks.

85. Defendant knew Plaintiffs worked hours for which they were not compensated least $7.25 in certain workweeks, and chose not to pay Plaintiffs at least $7.25 per hour for each hour worked.

86. Defendant violated the FLSA's minimum wage provision willfully and with reckless disregard for Plaintiffs' rights.

87. Plaintiffs seek their unpaid minimum wages for all time Defendant failed to compensate them at least $7.25 per hour for each hour worked during certain workweeks.

88. Pursuant to U.S.C. § 216(b), Defendant is liable to Plaintiffs for all unpaid minimum wage wages, liquidated damages, and attorneys' fees and costs of litigation.

## DEMAND FOR JUDGMENT

Plaintiffs respectfully request that the Court:

(a) Declare that Defendant violated the FLSA's minimum wage provision;

(b) Declare that Defendant violated the FLSA's overtime provision;

(c)     Enter judgment against Defendant that it violated the FLSA's minimum wage provision and, further, that its minimum wage violations were willful;

(d)     Enter judgment against Defendant that it violated the FLSA's overtime provision and, further, that its overtime violations were willful;

(e)     Enter a monetary judgment against Defendant, including:

       i)     Unpaid minimum wages at the rate of $7.25 per hour;

       ii)     Overtime wages at one and one-half times Plaintiffs' regular rate of pay;

       iii)     Liquidated damages in an amount equal to Plaintiffs' unpaid minimum wages and unpaid overtime wages;

       iv)     Reasonable costs and attorneys' fees;

       v)     Prejudgment interest;

       vi)     Post-judgement interest continuing to accrue; and,

(f)     Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

Respectfully submitted: August 31, 2022.

|  |  |
|---|---|
| **POOLE HUFFMAN, LLC.** | */s/ William S. Cleveland* |
| 3562 Habersham at Northlake | William S. Cleveland |
| Building J, Suite 200 | Georgia Bar No. 721593 |
| Tucker, Georgia   30084 | billy@poolehuffman.com |
| T: (404) 373-4008 | F: (888) 709-5723 | Christopher W. Timmons, Esq. |
|  | Georgia Bar. No. 712659 |

*Counsel for Plaintiffs*